STATE of Missouri ex rel. Ogden
M. CAIN, Relator,

v.

The Honorable Charles V. BARKER, Judge of the Circuit Court of Dallas County in the Thirtieth Judicial Circuit of Missouri, Respondent.

No. 59283.

Supreme Court of Missouri, En Banc.

Sept. 13, 1976.

Meredith B. Turner, Turner, Reid & Duncan, Springfield, for relator.

Thomas G. Strong and Mathew W. Placzek, Jr., Farrington, Curtis, Strong, Knauer & Hart, Springfield, for respondent.

FINCH, Judge.

This is an original proceeding in prohibition. Relator, defendant in a wrongful death action arising out of a highway accident, seeks to prevent respondent judge from enforcing therein an order wherein he directed relator to produce for inspection and copying by plaintiff the written statements given by relator to an adjuster for his insurance carrier. We issued our provisional rule in prohibition on November 10, 1975. We now make that rule permanent, prohibition being an appropriate remedy to prevent enforcement of discovery requiring production of privileged documents. *State ex rel. Terminal Ry. Ass'n of St. Louis v. Flynn,* 363 Mo. 1065, 257 S.W.2d 69 (banc 1953).

On November 17, 1974, while relator was driving a truck in Dallas County, Missouri, he struck a camper driven by Frank S. Miller, resulting in the death of Miller. His widow thereafter brought suit for damages. At the time of the accident, relator was an employee of the House of Webster, Inc. and was driving on their behalf a tractor-trailer rented from Ryder Truck Rental, Inc. Insurance policies in force at the time provided liability insurance coverage to House of Webster, Inc. and to relator, the driver. In addition, one of the policies was endorsed to provide coverage to Ryder Truck Rental, Inc.

On November 18, 1974, the day after the accident, and again on November 20, 1974, James Owens, an insurance adjuster for Crawford & Company, talked to relator at length about the accident and took written statements with reference thereto. It is the production of these statements which the respondent has ordered.

On November 26, 1974, a representative of decedent Miller's insurance company contacted relator and attempted to obtain a statement concerning the accident but Cain refused to discuss the occurrence or to give a statement to said adjuster.

The following spring (May 27, 1975), attorneys for plaintiff in the wrongful death action took Cain's deposition. Thereafter, on July 10, 1975, they filed a motion which

sought on the basis of rule 56.01(b)(3) to have the circuit court require Cain to produce and permit plaintiff to inspect and copy the statements given by him to James Owens on November 18 and 20, 1974. As grounds for such discovery, plaintiff's motion alleged that Cain in his deposition had been unable to provide answers to numerous questions propounded to him, that Cain's memory of the accident at the time he gave the statements to James Owens was better than when his deposition was taken, and that plaintiff had substantial need for said information and was unable to obtain the substantial equivalent by other means.

In support of that application, plaintiff's attorney, Thomas Strong, filed an affidavit which stated as follows: that Cain gave two statements to his insurance carrier soon after the accident in question; that he refused to talk to anybody else about the facts until his deposition was taken; that Cain's account of the accident varied considerably from that of other witnesses whose depositions had been taken; that Cain, when his deposition was taken, did not remember several crucial facts; and that, based on the foregoing, counsel believed that the statements given immediately after the accident might be useful in refreshing Cain's memory and might contain damaging admissions which could be presented by plaintiff to the jury as such.

In response, Meredith Turner filed an affidavit wherein he stated as follows: that he and his law firm were then representing Cain and had represented him prior to November 26, 1974; that Cain had been instructed by his firm not to discuss facts of the accident with anyone other than the members of the law firm or persons assisting it in investigation of the accident; that the conferences between relator and James Owens referred to by counsel for the plaintiff (those of November 18 and November 20, 1974) occurred after Cain had been advised not to talk to anyone other than members of the Turner firm or persons assisting it; and that at the time of said conferences James Owens was assisting the Turner firm in the investigation of the subject accident. The affidavit also asserted that the production of the statements given by relator to James Owens would violate the confidential relationship of attorney and client between the Turner firm and Cain.

On September 18, 1975, respondent judge sustained plaintiff's motion and ordered Cain to produce for inspection and copying the statements given by him to James Owens. Thereupon, relator filed a motion for a protective order, alleging, *inter alia*, "that the statements of Ogden Cain as to which discovery is now sought by plaintiff were obtained by James Owens at the direction and under the supervision of the undersigned attorneys who were then representing Ogden Cain, and were taken in anticipation of litigation and to prepare for trial" and "that the said statements comprise privileged material constituting communication between attorney and client, and, further, constitute work product". The motion went on to state that since these statements were privileged they were not discoverable under the provisions of rule 56.01. Thereafter, the trial court indicated that he would overrule the motion for protective order but he had not actually done so at the time relator filed his petition for writ of prohibition herein.

The language of rule 56.01(b)(1) authorizes discovery of matters not privileged. This necessarily means that privileged matters, such as communications between attorney and client, are not discoverable unless the privilege is waived by the client. Hence, the first question to be determined is whether the communications of November 18 and 20, 1974, by relator Cain to James Owens come within the attorney-client privilege. If they do, they are not discoverable and the protective order should be entered, unless the privilege has been waived.

In order to determine the question of whether the communications by Cain to James Owens were privileged, we look to the record before us in this proceeding which under rule 84.24 consists of "the petition for the writ, together with suggestions

in support thereof, any exhibits accompanying said petition, the writ and return of service thereon, together with the return the respondent made to the writ, and all other papers, documents, orders and records filed in the appellate court". The trial court heard no oral testimony on the motion to produce or on the motion for the protective order, but did have before it affidavits of Thomas Strong and Meredith B. Turner which had been filed in connection with the motion to produce. The affidavit of Thomas Strong does not purport to recite facts with respect to the relationship between Cain and James Owens or between Cain and the Turner firm other than to recite that Cain gave the two statements to his insurance carrier. The affidavit of Meredith B. Turner does address the question of these relationships. It stated first that Turner and his law firm were at the time of the affidavit representing Cain and had represented him prior to November 26, 1974. In paragraphs 2 and 3 of his affidavit Turner recites that Cain had been instructed not to discuss the facts of the accident with anyone other than members of the Turner firm or persons assisting it in the investigation and that the conferences between Cain and Owens in which Cain gave the two statements were held after Cain had been so advised. In addition, Turner went on to say that "at the time of that conference, Mr. James Owens was assisting the law firm of Turner, Reid & Duncan in the investigation of the subject accident".

■ It is true, as respondent points out, that the Turner affidavit does not at any time recite a specific date on which the Turner firm was employed and began its representation of Cain in this matter. So far as dates are concerned, it simply says that Turner and his firm were representing Cain before November 26, 1974. Even so, it is arguable, as claimed by relator, that the Turner affidavit alleges enough to permit a determination therefrom that Owens was working under the direction of the Turner firm when he took the statements from Cain on November 18 and 20, 1974; also that an attorney-client relationship between Cain and the Turner firm existed from and after that time. If it did, then the statements made by Cain to James Owens on November 18 and 20, 1974, were statements to an authorized agent or representative of the Turner firm in the investigation of this matter and were privileged.[1]

■ We have concluded that in deciding whether the statements of Cain to James Owens are privileged it is unnecessary for us to resolve from the language of the Turner affidavit or by means of a subsequent hearing thereon whether an actual attorney-client relationship existed between the Turner firm and Cain prior to the conferences of November 18 and 20, 1974. We reach this conclusion on the basis that it is clear that an insurer-insured relationship existed between the insurance company and Cain at the time of the statements and, for reasons subsequently enumerated, we conclude that by reason of such relationship, the statements given by Cain to his insurer fall within the protection of the attorney-client privilege.

Missouri courts have not ruled on this question of whether communications by an insured to his insurer are privileged. The question was raised in *Hutchinson v. Steinke,* 353 S.W.2d 137 (Mo.App.1962), but it was not decided therein because defendant did not dispute the proposition that such a communication would be privileged. Accordingly, the opinion at p. 140 stated that "for the purpose of this opinion we will assume, without deciding, that a statement given by an insured to his liability insurer, concerning an event which may be the basis

---

1. At common law the privilege accorded communications between client and lawyer included those made to the attorney's authorized agents such as clerks and stenographers, they being considered media of communication between the lawyer and his client. *Tyler v. Hall,* 106 Mo. 313, 17 S.W. 319 (1891); VIII Wigmore on Evidence, § 2301 (McNaughton rev. 1961); Kirkland Privileged Communications Between Attorneys and Clients in Missouri, 11 K.C.L.R. 109, 112 (1942); *Zenith Radio Corp. v. Radio Corp. of America,* 121 F.Supp. 792 (D.Del. 1954).

of a claim against him covered by his policy, is a privileged communication under an extension of that doctrine as applied to the relationship of attorney and client". Hence, the matter is one of first impression.

An annotation entitled "Privilege of Communications or Reports Between Liability or Indemnity Insurer and Insured", 22 A.L.R.2d 659 (1952) states at p. 660:

"According to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him."

In the same vein, 81 Am.Jur.2d, Witnesses, § 194 (1976) states at p. 228:

"It is the rule generally followed that a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him and which is covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and if the communication is intended for the information or assistance of the attorney in so defending him. Under this rule the company is regarded as a mere intermediate agent to transmit the communications to the attorneys of its claims department or to an eventual trial attorney if an action is brought.  *  *"

Numerous decisions from other states support the rule enunciated in the foregoing texts. For example, in *People v. Ryan,* 30 Ill.2d 456, 197 N.E.2d 15 (1964), Della Emberton was involved in an automobile collision wherein two persons were killed. She was covered by a public liability policy which contained the usual cooperation clause and a clause requiring the insurer to defend any suits brought against her. Af-

ter the collision the insurance company made an investigation and its investigator took a written statement from Della Emberton covering details of the occurrence. Thereafter, she was charged with driving while under the influence of intoxicating liquor. The attorney employed by her to defend that case went to the insurance company office and requested use of its investigation file. This attorney had on occasion represented this insurance company and it made its file available to him. That file contained the written statement of Della Emberton. In it she admitted that she had consumed several bottles of beer in two taverns before the accident.

Subsequently, Della Emberton's attorney was served with a subpoena duces tecum to produce his client's statement given to the insurance company. On instructions of his client, he declined, basing his refusal on the grounds that to do so would violate his client's rights against self-incrimination and that the written statement was a privileged communication between attorney and client. He was adjudged guilty of contempt and appealed. The Supreme Court reversed the conviction, holding that the statement of Della Emberton to her insurer was privileged. The reasoning of the court is persuasive and we quote it at length for that reason. The court said, 197 N.E.2d at 17:

"We therefore first consider the character of the communication between Della Emberton and her insurance company while such communication remained in the exclusive possession of the insurer. The Appellate Court's determination that the communication was privileged at that time is supported by substantial authority in other States. *Vann v. State* (Florida, 1956), 85 So.2d 133; *Heffron v. Los Angeles Transit Lines* (1959), 170 Cal.App.2d 709, 339 P.2d 567, 74 A.L.R.2d 526; *Gass v. Baggerly* (Tex.Civ.App.1960), 332 S.W.2d 426 (statutory provision incorporating rule); *Wojciechowski v. Baron,* 274 Wis. 364, 80 N.W.2d 434; *In re Heile,* 65 Ohio App. 45, 29 N.E.2d 175; *In re Klemann,* 132 Ohio St. 187, 5 N.E.2d 492, 108

A.L.R. 505; *Schmitt v. Emery,* 211 Minn. 547, 2 N.W.2d 413, 139 A.L.R. 1242; *Hollien v. Kaye,* 194 Misc. 821, 87 N.Y.S.2d 782; *Westminster Airways, Ltd. v. Kuwait Oil Co.,* 1 K.B. 134, Anno. 22 A.L.R.2d 648; *State v. Kociolek,* 23 N.J. 400, 129 A.2d 417.

"Certain Federal cases, however, have come to a contrary conclusion. *Gottlieb v. Bresler,* D.C., 24 F.R.D. 371; *Gordon v. Robinson,* D.C., 109 F.Supp. 106; *Colpak v. Hetterick,* D.C., 40 F.Supp. 350.

"We think the rationale of those cases upholding the privileged nature of communications between insured and insurer where the insurer is under an obligation to defend is more persuasive. We concede that such communications are normally made by the insured to a layman and in many cases no lawyer will actually be retained for the purpose of defending the insured. Nevertheless, by the terms of the common liability insurance contract, the insured effectively delegates to the insurer the selection of an attorney and the conduct of the defense of any civil litigation. The insured is ordinarily not represented by counsel of his own choosing either at the time of making the communication or during the course of litigation. Under such circumstances we believe that the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured. We believe that the same salutary reasons for the privilege as exist when the communication is directly between the client and attorney were present when Della Emberton made her statement to the investigator for her insurer. We therefore conclude that public policy dictates that the statement given by Della Emberton to her insurance carrier was clothed with the attorney-client privilege while in control of the insurer."

A similar result was reached in *Brakhage v. Graff,* 190 Neb. 53, 206 N.W.2d 45 (1973), wherein plaintiff in a personal injury action sought by motion to require defendants to produce for inspection and copying a statement given by defendant Kathryn Graff to a field representative of her insurer three days after the accident. Sometime later a suit was filed and at that time the insurance company employed attorneys to represent Kathryn Graff. Thereafter, the motion to inspect was filed. The court held that the statement was privileged even though made to a field representative of insurer rather than directly to an attorney representing insured and even though an attorney was not employed until later, saying at 47–48:

"Although there is authority to the contrary, the weight of authority appears to support the rule that a statement by an insured to his liability insurer is privileged. 'According to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him.' Annotation, 22 A.L.R.2d 659. See also, *Heffron v. Los Angeles Transit Lines,* 170 Cal. App.2d 709, 339 P.2d 567; *Travelers Indemnity Co. v. Cochrane,* 155 Ohio St. 305, 98 N.E.2d 840; *Gene Compton's Corp. v. Superior Court,* 205 Cal.App.2d 365, 23 Cal.Rptr. 250; *Lantex Constr. Co. v. Lejsal* (Tex.Civ.App.), 315 S.W.2d 177; *People v. Ryan,* 30 Ill.2d 456, 197 N.E.2d 15; *Vann v. State* (Fla.), 85 So.2d 133.

"The fact that the statement was made to a field claims representative of the insurer who was not a lawyer is not controlling. The privilege extends to statements made to agents of an attorney. As stated in VIII Wigmore on Evidence, § 2301, p. 583: 'It has never been questioned that the privilege protects communications to the *attorney's clerks* and his other agents (including stenographers) for rendering his services. The assistance

of these agents being indispensable to his work and communications of the client being often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents.'

"The statements involved here were obtained in performance of the insurer's obligation to investigate and settle or defend claims made against the defendants and were intended for the use of the attorneys selected by the insurer to represent the defendant."

In reaching a similar result, the court in *Hollien v. Kaye,* 194 Misc. 821, 87 N.Y.S.2d 782, 785 (Sup.Ct.1949), said:

"A communication by letter between an attorney and his client or the latter's agent is privileged, as much as an oral communication between the attorney and the client. *LeLong v. Siebrecht,* 196 App. Div. 74, 187 N.Y.S. 150.

"The statements of these defendants were intended as a communication by them to the attorney ultimately to be retained for them by the carrier, under their contract. The delivery of the statements by these defendants to the carrier's representative, whether he be layman or lawyer, constitutes the carrier and such representative the agent of defendants, to transmit such statements to their attorney, when he has been selected and retained by the carrier.

"The fact that defendants did not select their own counsel is of no moment. They had a contract, for which they paid a valuable consideration, which obligated the carrier to provide them with counsel. The carrier stood in the position of an agent of these defendants to select and retain their attorney for them."

In further explanation of the ruling, the court said at 786:

"In our present complex society and vast use of motor vehicles, the insurance against liability on the part of owners of motor vehicles has become the rule rather than the exception. In fact, in some states such insurance is compulsory. We, in this state, have a modified form of compulsory insurance.

"It follows that in case of an accident, the owner of a motor vehicle is bound by the terms of his contract, to make a full and prompt report to his carrier. The assured should be encouraged to, rather than discouraged from, making a full and complete disclosure to his insurance carrier. Let us suppose that an assured does so and furnishes his statement to a lay representative of his carrier, before its general counsel has ever heard of the case and could not yet be said to be the attorney for the assured; or before some other attorney is engaged to represent the assured, and that hence, it might be held that the statement may not come either within the letter or the spirit of Section 353, Civil Practice Act. Let us suppose further that the statement thus given by the assured to his carrier, in compliance with his contract, and on the assumption that he is furnishing the statement to the agency which he has paid to protect him, reveals the commission of acts which constitute the crime of culpable negligence. Should the assured be prevented from unbosoming himself of the true facts concerning an accident to the very entity, which, either through voluntary choice or under legal compulsion, he has paid to protect his interests in the event of an accident, through fear that his statement could be reached by the person who will instigate against him either civil or criminal proceedings or both? Or should fear of self-incrimination or fear of a recovery beyond policy limits subjugate the assured to the point of concealing the true facts to the very one whom he has paid in advance to protect him in just such a contingency.

"It seems to this court that it would be contrary to sound public policy to permit the discovery and inspection of statements of a defendant or a prospective defendant made to his own insurance carrier, whether made before or after suit is instituted or to its lay representatives, either before or after an attorney has

been formally selected by the carrier to represent its assured."[2]

■ Respondent urges that relator did not raise the issue of privilege in a timely fashion and, hence, waived the privilege, citing *Rock v. Keller,* 312 Mo. 458, 278 S.W. 759 (1926), and *Wren v. St. Louis Public Service Co.,* 355 S.W.2d 365 (Mo.App.1962). In *Rock* the court did say that privilege must be raised in a timely fashion or is waived but went on to say, 278 S.W. at 766:

"'The proper time for objection is when a question calling for a disclosure of privileged matter is asked and *before it is answered.*'" (Emphasis supplied.)

Here the objection by means of the motion for protective order was timely because it was raised when a request for disclosure of the statements was made but before the request was answered or complied with by furnishing the documents for inspection.

We also conclude that *Wren* does not support respondent's position herein. In that case interrogatories were submitted and answered. When plaintiff attempted at trial to read the interrogatories and answers, defendant objected on the basis of privilege. The court held that the defendant by answering had waived the privilege. That has not occurred in this case.

■ Next, respondent asserts that we should find that relator has waived any privilege with reference to the statements in question "since relator has denied liability and can be expected to testify at trial at which time he will waive his privilege, and, therefore, the interests of justice demand that the statements be produced in advance of trial". Respondent relies on the case of *State ex rel. McNutt v. Keet,* 432 S.W.2d

597 (Mo. banc 1968), to support this contention. However, respondent overlooks the fundamental difference between the situation here and in *Keet.* In *Keet* the one entitled to the protection of the physician-patient privilege brought suit for damages and we pointed out that she elected to do so and that it was evident that she could not prosecute her action for damages without waiving that privilege. As the court said, at p. 601:

"* * * Sooner or later she must take the stand herself and tell about her injuries and about going to her doctors. Inevitably she must call her doctors to the stand to testify about her injuries and treatment if she expects to recover anything. Her conduct in maintaining the action, it having become apparent that her claim of injuries and aggravation of previously existing conditions is to be among the subjects of dispute, shows that she intends and is willing to abandon the privilege."

In this case relator has not instituted the suit involving the collision in which he was involved. He is a defendant, brought into court involuntarily. He has not indicated, as did the plaintiff in *Keet,* a willingness and an intention to waive the privilege available to him. We conclude that Cain has not waived his privilege.

In view of the fact that we have concluded that the statements sought are privileged and, hence, not subject to discovery under rule 56.01, it is unnecessary for us to consider whether respondent in seeking the statements made a sufficient showing of substantial need therefor and that she was unable without undue hardship to obtain

---

**2.** Other cases supporting the result we reach include *Heffron v. Los Angeles Transit Lines,* 170 Cal.App.2d 709, 339 P.2d 567 (1959), *Grand Union Co. v. Patrick,* 247 So.2d 474 (Fla.App. 1971), *Vann v. State,* 85 So.2d 133 (Fla.1956), *Kandel v. Tocher,* 22 A.D.2d 513, 256 N.Y.S.2d 898 (1965), *Cataldo v. County of Monroe,* 38 Misc.2d 768, 238 N.Y.S.2d 855 (Sup.Ct.1963), *In re Klemann,* 132 Ohio St. 187, 5 N.E.2d 492 (1936), *Westminster Airways, Ltd. v. Kuwait Oil Co.,* 1 K.B. 134, 22 A.L.R.2d 648 (Eng.1951).

Numerous cases, mostly federal, reach a contrary result, holding that communications be-

tween an insured and his insurer are not privileged. In most instances the cases simply announce that conclusion without analyzing the relationship or reasons pro or con as to whether such communications should be privileged. See *McDougall v. Dunn,* 468 F.2d 468 (4th Cir. 1972), *Dennhardt v. Holman,* 12 F.R.D. 79 (D.Colo.1951), *Gottlieb v. Bresler,* 24 F.R.D. 371 (D.C.1959); *Whitaker v. Davis,* 45 F.R.D. 270 (W.D.Mo.1968), *Kulich v. Murray,* 28 F.Supp. 675 (S.D.N.Y.1939), *Burns v. Mulder,* 20 F.R.D. 605 (E.D.Pa.1957), *Gordon v. Robinson,* 109 F.Supp. 106 (W.D.Pa.1952).

the substantial equivalent as required by rule 56.01(b)(3).

We make permanent the provisional rule heretofore entered.

HOLMAN, HENLEY and DONNELLY, JJ., concur.

BARDGETT, J., concurs in separate concurring opinion filed.

MORGAN, J., concurs in separate concurring opinion of BARDGETT, J.

SEILER, C. J., dissents in separate dissenting opinion filed.

BARDGETT, Judge (concurring).

I concur in the principal opinion but desire to state that my concurrence is restricted to the specific factual situation presented in this case, to wit, an individual insured driver gives a statement to the adjuster for his own insurance company which has the obligation to defend that insured.

SEILER, Chief Justice (dissenting).

I respectfully dissent. As I understand the principal opinion, it finds it unnecessary to determine whether there was an attorney-client relationship between Cain and the Turner firm on November 18 and 20, 1974, the dates on which the insurance adjuster took Cain's statement. The principal opinion says it is arguable that the relationship did exist, but it is not necessary to resolve this question inasmuch as it is clear in any event that an insurer-insured relationship existed between the insurance company and Cain at the time of the statements; therefore, the statements given by Cain to his insurer fall within the protection of the attorney-client privilege and privileged matters are not discoverable. Rule 56.01(b)(1).

The net effect of this, it seems to me, is to clothe with privilege whatever information is furnished the insurance adjuster by the insured, whether it is reduced to writing or is in the form of notes taken by the adjuster or dictated by him subsequently in a memorandum or simply carried in his head. There really is not and could never be any true attorney-client relationship existing between a lay adjuster and the insured, but nevertheless we are going to treat it as though the insured were in fact talking to his lawyer, because in the indefinite future there might be a damage suit filed and the lawyer selected by the insurer to defend the case would then have use for the insureds' statement.

I have serious doubts about the advisability of making any statements taken by an insurance adjuster immune from discovery. Automobile liability insurance companies and insurance companies in general are in the business of insuring persons, firms, and corporations against loss and liability from a variety of sources. Investigation of claims of all sorts is a matter of routine by insurance companies.[1] It is done when a claim is reported, regardless of whether there is a probability of litigation. Further, it is well known that only a small fraction of claims involve litigation. The vast majority are settled without litigation and without lawyers. When an insurance adjuster takes a statement from an insured for an insurance company, he is doing no more than performing the routine business of the insurance company. Instead of liberalizing discovery by the adoption of our new rule 56 in 1975 (which I believe is what the court intended to do) the rule announced by the principal opinion would shield from discovery the internal documents of insurance companies obtained in the normal routine of their business relating to the claims of their insureds.

In my opinion, we are not giving proper consideration to the changes made by the 1975 amendment to our rule 56, which was based on the 1970 amendments made to federal rule 26. Without exception, the cases relied upon by the majority opinion were decided or rely on cases decided prior to the 1970 amendments to the federal

---

1. Ordinarily, facts, information and records obtained or made in the ordinary and usual course of business are discoverable. *State ex rel. Terminal R. Ass'n of St. Louis v. Flynn*, 363 Mo. 1065, 257 S.W.2d 69 (banc 1953).

rules, and of course do not consider the situation in the light of those changes or the continued trend toward expanded discovery which frowns upon rewarding parties for hiding or obscuring potentially significant facts. The majority opinion creates a new privilege in Missouri law (insured-insurer) and thereby nullifies to that extent the provisions of our new rule 56.-01(b)(3).

If a statement obtained by an insurance adjuster from an insured is to be privileged and immune from discovery no matter what, why, in the changes which we made in our discovery rules in 1975, did we in rule 56.01(b)(3) provide that documents "prepared in anticipation of litigation or for trial by . . . [the] other party's . . . *insurer* . . . " (emphasis supplied) are discoverable upon a certain showing of need and hardship? We had nothing like that in our rules prior to 1975. In fact, former rule 57.01(b) provided that production should not be required of any writing obtained by the adverse party or his indemnitor or agent in anticipation of litigation or preparation for trial (with the sole exception of a statement given by the interrogating party). The Cain statement would not have been discoverable under the former rule, not because of the attorney-client privilege, but because the rule so provided. Now we are saying it still is not discoverable, even though we have dropped from the rules the provision which made it nondiscoverable. If a statement of an insured taken by an insurance adjuster was to be considered privileged, then there would be no need to make mention of the subject beyond rule 56.01(b)(1) which provides that "Parties may obtain discovery regarding any matter, not privileged . . . ", and it would make no sense to make further reference to such material and provide for its discovery, which it seems to me is what the above quoted portion of our new rule 56.01(b)(3) does. But if it were meant that such a statement or document is subject to discovery under certain conditions, then the portion of our new rule 56.01(b)(3) above has a meaning and purpose and is not superfluous.

It is true that under the standard automobile liability insurance policy the insurer is obligated to defend the insured if and when he is sued and to provide counsel to handle the case. I doubt, however, if this justifies bringing an insurance company within the protection of the attorney-client privilege, even if we ignore the portion of rule 56.01(b)(3) referred to above.

Examination of the standard liability insurance policy will show that the insurer agrees "to defend, with attorneys selected by and compensated by the company" any suit seeking damages covered by the policy. For his part, the insured agrees to "cooperate with the company and, upon request, attend hearings and trials, assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance." The insured has no choice in the selection of the attorney; he has no right to change attorneys or fire the company attorney, and in case of any conflict of interest between the insured and the insurer, the attorney's first loyalty is to the insurer who hired and pays him, not the insured. This is by no means the same as the traditional attorney-client relationship, which is what the courts had in mind when the privilege against disclosure of confidential communications was originally established. We should be most cautious in extending this high privilege, because every such extension removes from the arena of the courts evidence which is highly relevant and which would otherwise be used as a matter of course.

I think we also should remember that there is no requirement in Missouri that the operator of an automobile carry liability insurance and when an individual does elect to carry such insurance then the matter becomes one of contract between him and his insurer. One of the things the insured agrees to do in the contract is to cooperate with the insurer. He agrees to report the accident and to give information respecting the time, place and circumstances thereof. These contractual obligations, voluntarily

assumed, require complete information from the insured, not partial or distorted information. As said in 7 Am.Jur.2d, Automobile Insurance, Sec. 178, p. 512: "Under the co-operation clause of an automobile liability insurance policy, it is the duty of the insured to give a full, frank, and complete statement of the cause, conditions, and circumstances of the accident and the conduct of the parties at the time, in order that the insurer may properly present its defense, or determine whether there is a genuine defense. . . . [T]he intentional furnishing of false information of a material nature either before or at the trial is a breach of the co-operation clause. . . ."

Professor Wigmore points out there are four conditions which are recognized as basic to the establishment of a privilege against the disclosure of communications. He sets them forth as follows (Wigmore on Evidence, McNaughton Revision, Vol. VIII, Sec. 2285): "(1) The communications must originate in a *confidence* that they will not be disclosed. (2) The element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties. (3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.* (4) The injury that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation."

Tested by the foregoing, it does not seem to me that a justification has been established for extending privileged communication status to a statement obtained from the insured by an insurance adjuster as a part of the routine investigation of claims for the insurance company. Specifically, it does not seem to me that (1), (2), or (3) above are present and it is speculative as to (4). The communication between the insured and the insurance adjuster originates in the fact that the insured has elected to take out liability insurance and as a part of the contract has agreed to make a full and accurate disclosure to the insurance company of what happened. It is to obtain the liability protection that the insured agrees to make full disclosure. The disclosure made after an accident originates from that source, not because of a confidence that the communications to the adjuster will not be disclosed. If the element of confidentiality were essential to the maintenance of the relation, it would have been provided for in the standard policy, but it is not. Under the law, as earlier said, if the insured does not make a full disclosure he runs the risk of the insurance company being entitled to disclaim coverage. The insured is obligated to tell the insurer the full facts by the terms of the contract, regardless of whether it is kept confidential. Nor do I believe the insured-insurer relationship is one which fits the requirement that it ought to be sedulously fostered. I would think rather that the courts should be neutral in this area, neither encouraging nor discouraging the relation, instead of affirmatively aiding the insured and the insurer by extending the immunity of privilege to statements made to the adjuster by the insured, at the expense of all those who may have legitimate claims and a valid reason for ascertaining what the insured had to say about the accident while it was still fresh in his mind.

As the principal opinion states, many federal cases hold that a statement given by the insured to an insurance adjuster is not privileged. The reasoning of the federal courts is that statements of parties and witnesses taken immediately after the accident constitute "unique catalysts in the search for truth" and where the party seeking discovery is unable for whatever sufficient reason to obtain equivalent information (which plaintiff contends is her situation here but which the majority opinion says is not necessary to decide), then under the federal rule, which is the same as our rule 56.01(b)(3), the statements should be produced. *McDougall v. Dunn*, 468 F.2d 468 (4 Cir. 1972); further, that the nature of the business of an insurance company involves claims and to make its investigation and statements nondiscoverable would foreclose "almost all internal documents of insurance companies relating to the claims

of insureds". *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367 (D.C.Ill.1972). There is also respectable authority to the same effect in state courts. See 23 Am.Jur.2nd, Depositions and Discovery, Sec. 171. There are a good many automobile damage suits tried in federal court and defended by insurance companies under the federal rules of discovery, but this does not seem to have brought about any breakdown in the insurance industry or produced any hardship on any insured or reluctance to take out liability insurance. I believe this shows that the fear that making statements discoverable is somehow going to impair the operation of liability insurance companies or cause reluctance on the part of insureds to tell the true facts about their driving of motor vehicles is not justified. I would come down on the side of encouraging and enlarging discovery, not restricting it, and therefore respectfully dissent.

Additionally, this case is an illustration of the unfairness that may result if we adopt the rule that a statement given by an insured to an insurance adjuster is immune from discovery.

According to the brief of respondent (and as I understand it, there is no denial of this by relator), efforts were made by others to interview Cain and obtain his statement or version of the accident within a few days after the accident, but Cain refused to discuss the facts of the accident, saying he had already told his adjuster as much as he possibly could. Later plaintiff attempted to take Cain's deposition, but Cain was unable to recall or could only approximate many of the important details concerning the accident. Specifically, as shown by the transcript of the deposition attached as an exhibit to the petition for writ of prohibition, Cain was unable to recall whether there were any traffic signs where the accident occurred, could not be positive whether there were any vehicles in the vicinity other than the three vehicles directly involved, could not recall how far the camper truck was from where the collision occurred when he first saw the Rambler, could not recall whether the headlights of the Rambler were on bright or dim, had no idea as to the speed of the camper truck, did not know whether or not he (Cain) had entered the curve when he first saw the approaching headlights of the camper, did not recall what gear he was in, could not recall how loud a sound the brakes made, could not recall how far he was from the rear of the Rambler when he first swerved to the left —"it would just be an uneducated guess"— could not recall what part of his vehicle came in contact with the Rambler, could not recall the position of his tractor-trailer unit with respect to the right or left hand lane at the time of collision, did not know how far he travelled from the time he collided with the Rambler until he collided with the camper, could not estimate whether it was more or less than 10 feet, did not know his speed at time of collision with the Rambler, or how much of his trailer was in the wrong lane, or what part of the camper was struck, or how far the Rambler was knocked.

Plaintiff's husband might have known some of the facts of the accident, but he was killed in the collision. It does not appear whether plaintiff herself was a witness to the accident or not. In any event, Cain was the driver of one of the vehicles and no one else had his exact vantage point and personal knowledge of what he observed and did. The circumstances may well be that plaintiff "has substantial need" of Cain's statements in the preparation of her case and is unable "to obtain the substantial equivalent of the materials by other means", a possibility which rule 56.-01(b)(3) provides for. It is clear that had Cain been able to recall the details as to the facts of the accident, he would have been required to disclose the same in his deposition. He could not have refused to testify as to the facts merely because he had incorporated a statement of such facts in his statement to the adjuster. But this means of ascertaining the facts from Cain failed because he could not recall the details at the time of his deposition. In this situation I do not believe that a plaintiff who needs the information must be relegated to con-

tinued ignorance of what the defendant knows about the accident when there is in existence a statement or statements which were taken by an adjuster at a time when the matter should have been quite fresh and vivid in defendant's recollection. I think this is taken care of by rule 56.-01(b)(3). I would hold that Cain's statements should be produced and would discharge the provisional rule.