LAWRENCE KANDEL, Respondent, *v.* LOUIS TOCHER, Appellant.

First Department, March 4, 1965.

514

*Emanuel Morgenbesser* (*Lewis I. Wolf* and *Nathan Cyperstein* of counsel; *Henry Wolfman*, attorney), for appellant.

*M. William Mach* for respondent.

BREITEL, J. P.  In this negligence action plaintiff sues to recover damages for personal injuries sustained while a passenger in defendant's motor vehicle.  The action is defended, in fact, by defendant's insurer.

Defendant appeals from an order denying his motion for a protective order pursuant to CPLR 3103 and 3122 to preclude plaintiff's notice given under CPLR 3101 and 3120 for the production of a copy of " the accident report and statements, photographs, diagrams, etc., relating to the accident made prior to the commencement of this action ".  Such documents had been

made or produced in connection with defendant's report of the accident to his insurer, as required by the terms of the liability insurance policy. Special Term in denying the motion held: " The statement of a defendant given to his insurance carrier is not privileged nor is it the work product of an attorney or matter prepared for litigation."

The order should be reversed and the motion for a protective order granted. The material sought is material prepared for litigation conditionally excepted by subdivision (d) of CPLR 3101 and may even be privileged under subdivision (b) or excluded as an attorney's work product under subdivision (c) of that section.

Significant in the situation of this case is the fact that the kind of insurance carried by defendant and in connection with which the material sought was created is automobile liability insurance. Such insurance has as its purpose the defense and settlement of claims made against the insured because of the insured's liability at law to respond in damages for his acts or omissions in the ownership or operation of an automobile. The policy requires the insurer to represent and defend the insured in the event an action such as this is brought against him. Whether a claim is accepted or rejected in advance of litigation, or must be resolved in the litigation process, is incidental to the ultimate purpose of protecting the insured from liability for payment under an enforcible judgment. In consequence, once an accident has arisen there is little or nothing that the insurer or its employees do with respect to an accident report except in contemplation and in preparation for eventual litigation or for a settlement which may avoid the necessity of litigation. In this connection, therefore, it is immaterial whether attorneys have actually been assigned or employed by the insurer to represent the insured in the settlement or defense of the claim. For parallel reasons it is immaterial whether the action based on the claim has been begun or not. On this view, automobile liability insurance is simply litigation insurance.

The kind of investigation, reports, and statements involved in the performance of an insurer's responsibility under automobile liability insurance is not to be confused with the investigation, reports, and statements resulting from the regular internal operation of an enterprise. Such material serves many purposes in the conduct of the enterprise, including perhaps eventual use in any litigation which may ensue. Thus, the material resulting from an investigation made by a public utility in connection with an accident occurring in its operation may be a part of the regular business of conducting the utility. The

purpose is not limited to, or even predominantly that of, preparing for a litigation risk. On the contrary, the purpose may be to prevent future accidents, discipline careless employees, or, generally, to increase the economy and efficiency of the operation. In that situation the preclusive provisions of the disclosure statutes do not apply.

The statutes, while not completely free of the need for interpretation, are clear enough. After general provisions providing for full disclosure of all evidence material and necessary in the prosecution or defense of an action, regardless of the burden of proof, CPLR 3101 (subd. [d]) provides: "The following shall not be obtainable unless the court finds that the material·can no longer be duplicated because of a change in conditions and that withholding it will result in injustice or undue hardship: * * * 2. any writing or anything created by or for a party or his agent in preparation for litigation." Significantly, subdivision (e) of the same statute provides, without specifying any preconditions, that a party may obtain a copy of his own statement. The significance lies in the fact that a similar reference with respect to the adverse party's statement is not made.

The appellate decisions are consistent with the foregoing analysis. The Appellate Division for the Second Department has held precisely in accordance with the conclusions reached here (*Finegold* v. *Lewis*, 22 A D 2d 447). This court held, since the CPLR was enacted, that a public carrier would be required to produce the reports and statements made by employees of the defendant with respect to an accident concerning which the carrier was being sued (*Bloom* v. *New York City Tr. Auth.*, 20 A D 2d 687). *Rios* v. *Donovan* (21 A D 2d 409), in which Mr. Justice VALENTE on behalf of this court elaborated upon the distinctions in procedure between pretrial examination and pretrial production of documents, does not suggest the contrary. Indeed, in discussing the *Bloom* case (*supra*) the court emphasized not only that the reports had been obtained prior to the institution of suit but that they had not been made in preparation for trial.

The commentators on the CPLR are in accord with this analysis. Thus, in Weinstein-Korn-Miller (N. Y. Civ. Prac., vol. 3, par. 3101.54) distinction is made between materials created as part of a normal business routine and assembled for transmittal to an attorney and other material prepared in contemplation of litigation, whether by nonlawyers or lawyers acting in a nonlegal capacity. These are distinguished again from materials prepared by attorneys for a party in litigation. The statute is interpreted to preclude materials prepared in con-

templation of litigation even if by nonlawyers or lawyers acting in a nonlegal capacity. Professor David D. Siegel in his supplementary practice commentary to section 3101 of McKinney's CPLR seems to be touching on the distinction. He notes that the cases in the courts of first instance have not uniformly followed the distinction (see McKinney's Cons. Laws of N. Y., Book 7B, CPLR, p. 12 of 1964 cumulative pocket part). (See, also, N. Y. Practice Survey, 38 St. John's L. Rev. 406, 435–436, in which the distinction is developed.)

On the basis thus far discussed, the material sought under the instant notice is at least conditionally precluded. A circumstance which might avoid the preclusion, of course, is a showing under the language of the statute "that the material can no longer be duplicated because of a change in conditions and that withholding it will result in injustice or undue hardship." There has been no such showing in this case and, therefore, there was no warrant for denying defendant's motion.

A further comment by way of caveat is merited if proper application of the statute is to be made in the future. It is not necessary now to determine whether reports, investigation, and statements received or created by an automobile liability insurer would also involve the other preclusive provisions of CPLR 3101. But if they do, then an absolute preclusion would ensue. Thus, it may appear that the matter sought is privileged under subdivision (b) based upon the attorney-client relationship. In that connection it would make no difference if the client has not himself retained the attorney (5 Weinstein-Korn-Miller, *op. cit., supra,* par. 4503.04). By extension, in a proper case, a court might conclude that the privilege arises in advance of the assignment or actual employment of an attorney by the insurer to represent its insured. On quite parallel reasoning, the provision contained in CPLR 3101 (subd. [c]) might also be held to apply. That subdivision absolutely precludes the "work product" of an attorney. For an analysis of the overlapping effect of CPLR 3101 (subds. [b], [c]) see Weinstein-Korn-Miller (*op. cit.,* vol. 3, pars. 3101.42–3101.49).

Lastly, it should be emphasized that the distinctions involved in these problems of disclosure are not merely technical and do not flow from accidental differences in statutory language. An important policy consideration is involved. It is of the greatest importance that an insured be encouraged to make complete and candid disclosure to his liability insurer. The purpose is just as significant as in the case of the attorney-client relationship in the absence of insurance. Indeed, as already noted, automobile liability insurance, just because it is litigation insurance,

is an institutionalized substitute for the individualized attorney-client relationship in litigation or contemplated litigation. In appropriate and parallel contexts it is entitled to similar protection. In short, there is no useful purpose revealed, and every noxious hazard now indicated, if adverse parties in tort actions should be entitled to receive material created by the automobile liability insurer in preparation for handling the claims made against its insureds.

The situation, of course, is quite different with respect to insurance other than liability insurance. So it has been held by this court in a defamation action that the plaintiff was entitled in a pretrial examination to a disclosure of a proof of claim made by an insured (defendant in the defamation action) to its insurer for losses sustained as a result of alleged fraudulent and dishonest acts by an employee (*Gallagher* v. *Albert Woodley Co.*, 22 A D 2d 763). In that case, of course, the insured at the time of its statement was making claim against its fidelity insurer, as distinguished from making a report to an insurer in order that such insurer, as in the case of liability insurance, might be able better to defend against a claim by a third party.

Needless to add, in the light of the entire discussion, the issue in this case is not whether the material sought is available by discovery and inspection as distinguished from its production in conjunction with an examination before trial (cf. *Rios* v. *Donovan*, 21 A D 2d 409, *supra*; see *Speight* v. *Allen*, 44 Misc 2d 1072). By either disclosure device the material sought is not available in the absence of the condition specified in CPLR 3101 (subd. [d]), and it may be that the material, or some of it, may not be available under any circumstances, if precluded under CPLR 3101 (subds. [b] or [c]). On the question of absolute preclusion it is not necessary now to pass.

Accordingly, the order denying defendant's motion for a protective order should be reversed, on the law, on the facts, and in the exercise of discretion, with costs and disbursements to defendant-appellant against plaintiff-respondent.

RABIN, VALENTE, EAGER and BASTOW, JJ., concur.

Order, entered on November 4, 1964, denying defendant's motion for a protective order, unanimously reversed, on the law, on the facts and in the exercise of discretion, with $30 costs and disbursements to defendant-appellant against plaintiff-respondent.