OPINION OF THE COURT
Harold J. Hughes, J.
The issue presented on this motion is whether CPLR 3101 (subd [g]) (L 1980, ch 283) providing for disclosure of any written report of an accident prepared in the regular course of business requires the disclosure of a party’s report of an accident to his insurance carrier.
This is an action for personal injuries allegedly arising from the collision of a vehicle owned and operated by Raymon Masters, in which Kathleen Mayberry was a passenger, and an automobile owned and operated by defendant Hassenpflug. It is alleged that Hassenpflug’s insurer, Metropolitan Property Liability Company, investigated the accident and received an accident report from its insured. Plaintiffs have served a notice pursuant to CPLR 3120 seeking to compel disclosure of the accident report given by Hassenpflug to Metropolitan. CPLR 3101 (subd [g]), which became effective on September 1, 1980, provides: “Except as is otherwise provided by law, in addi *999 tion to any other matter which may be subject to disclosure, there shall be full disclosure of any written report of an accident prepared in the regular course of business operations or practices of any person, firm, corporation, association or other public or private entity, unless prepared by a police or peace officer for a criminal investigation or prosecution and disclosure would interfere with a criminal investigation or prosecution.”
Prior to the enactment of subdivision (g), decisional law held that in a personal injury action a defendant’s report of an accident given to his liability insurer was exempt from discovery (Kandel v Tocher, 22 AD2d 513). This court is aware of the recent opinions of the Second Department (Pataki v Kiseda, 80 AD2d 100) and Mr. Justice Niehoff sitting at Special Term in Nassau County (Chaplin v Pathmark Supermarkets, 107 Misc 2d 541) which have construed subdivision (g) as a distinct departure from prior decisional law by subjecting to disclosure all accident reports prepared in the regular course of business operations notwithstanding that the reports were prepared exclusively for use in litigation. However, both decisions dealt with accident reports prepared by an employee at the behest of an employer and did not address the question of a report given by an alleged tort-feasor to his liability insurance carrier under the compulsion of the co-operation clause contained in his liability insurance policy. A review of the legislative history of the enactment is in order.
The original version of subdivision (g) was passed during the 1979 session and vetoed by the Governor on June 11, 1979. That version provided: “g. Accident reports. Accident reports or investigation statements that result from the regular internal operation of an enterprise, authority, business, association, not-for-profit corporation, municipality, school district, political subdivision or other instrumentality of the state shall be fully discoverable, unless prepared exclusively for litigation.”
The Governor gave the following reasons for disapproving the bill:
“While the purposes of the bill are exemplary and full and fair disclosure is to be encouraged, the effect of specif! *1000 cally enumerating entities subject to full disclosure in regard to such reports is to statutorily constrict whát is a more expanded view of discovery of such reports presently permitted under existing case law. Accordingly, the bill is contrary to current judicial trend.
“In particular instances when restraint of discovery is desirable, such as criminal investigation reports prepared by the State Police and reports prepared for particular administrative purposes such as Workers’ Compensation proceedings, sufficient guide lines are not set forth in the bill to protect such reports from discovery in subsequent civil litigation.
“In addition, the bill fails to set forth whether an action need actually have been commenced and fails to indicate who may seek discovery of such reports.”
The bill’s sponsor, Assemblyman Melvin H. Miller, Chairman of the Assembly Codes Committee, redrafted the bill to meet the Governor’s objections and submitted it at the 1980 session as Assembly Bill No. 9303-A. In the legislative memorandum in support of the bill, Assemblyman Miller states that the purpose of the bill is “to make accident reports subject to pretrial disclosure in civil litigation when prepared from the usual business operations or practices of any person or entity”. (NY Legis Ann, 1980, p 131.) In the section of the memorandum concerning justification for the bill, Mr. Miller states: “The courts have generally permitted the discovery of accident reports or investigation statements that result from the regular internal operation of an enterprise, authority or business, because such documents generally are not prepared exclusively for litigation, although ultimately they may be utilized for purposes of negotiation or litigating personal injury or property damage claims resulting from accidents. This bill accurately codifies existing decisional law.” (Emphasis supplied.) (NY Legis Ann, 1980, p 131.)
In a letter to the Governor’s counsel, Assemblyman Miller, urging executive approval, reiterated his position that “this bill represents an accurate codification of existing decisional law, and is in accordance with the current judicial trend of more open disclosure laws.” The Legislative Counsel of the New York State Office of Court Admin *1001 istration states that agency’s position on executive approval of the bill in a letter of June 12, 1980 to the Governor’s counsel as follows: “Last year, the Advisory Committee on Civil Practice opposed an earlier version of the proposal because it was apprehensive that the enumeration of particular entities from whom disclosure may be sought and particular matters subject to disclosure might permit the unintended construction that these lists are exhaustive and that no other entities or materials are subject to disclosure, because not specifically listed. This year’s draft of the proposal, listing all possible entities, public and private, and including the phrase ‘in addition to any other matter which may be subject to disclosure’ meets that objection.
“The Advisory Committee recognizes that the purpose of the measure, to clarify present law, is laudable, but nevertheless questions whether it is necessary to include in the CPLR a clarification of the principle, which at present is clear in case law, that the items referred to in this proposed subdivision are subject to disclosure. The committee questions whether the fact that some parties may disregard the decisional law and refuse to disclose accident reports except on court order warrants placing additional provisions in the CPLR with the risk of cluttering that code as the former CPA became cluttered.”
The legislative history of CPLR 3101 (subd [g]) establishes that the enactment was intended to codify existing decisional law. The omission in Assembly Bill No. 9303-A of the language contained in Assembly Bill No. 642, “unless prepared exclusively for litigation”, appears to have been an inadvertent omission in redrafting the legislation to overcome the Governor’s objections. No challenge was ever raised to the language exempting accident reports “prepared exclusively for litigation” and, in fact, it is manifest that the effect of the deletion of that language was not considered in the legislative process to be the cause for a change in existing decisional law. Of course, subsequent decisions have demonstrated the error of that assumption (Pataki v Kiseda, 80 AD2d 100, supra; Chaplin v Pathmark Supermarkets, 107 Misc 2d 541, supra).
*1002 Addressing the issue raised by this motion, the court holds that the enactment of CPLR 3101 (subd [g]) was not intended to subject to discovery a party’s report of an accident given to his liability insurer, and such accident reports retain the privilege accorded by decisional law. It would be wrong to hold that 16 years of carefully reasoned decisional law beginning with Judge Breitel’s decision in Kandel v Tocher (22 AD2d 513, supra) should be swept away by a legislative enactment whose purpose, according to its sponsor, was simply to codify existing decisional law. Public policy requires that in certain situations a person should be permitted to speak freely without fear that the conversation will be disclosed to others and perhaps used against the speaker. One.such situation is a driver describing the occurrence of an accident to his liability insurer. A contrary rule can only encourage silence on the part of insureds, and a practice by insurers of not reducing oral accident descriptions to written or recorded form. A change in the law as dramatic as sought by plaintiffs should not result from the inadvertent failure of the drafter of this legislation to include the language “unless prepared exclusively for litigation” in the amended version of the bill.
The motion of the plaintiff Masters for an order pursuant to CPLR 3124 compelling the defendant to produce for discovery and inspection any accident reports made to his liability insurer shall be denied, without costs.