OPINION OF THE COURT
Robert A. Harlem, J.
The plaintiffs move for a preclusion order as well as a direction requiring the defendant, Allstate Insurance Company (hereafter Allstate), to produce an expert witness and other materials for an examination before trial.
This lawsuit emanates from a fire loss sustained by the plaintiffs on April 23, 1980. There is no question that the defendant, Allstate, had issued a contract of fire insurance upon the property. Apparently, coverage is denied on the theory that the plaintiffs or oiie of them engaged in intentional acts which were productive of the loss.
The fire assertedly took place at about 4:00 a.m., less than an hour after Eugene Ogden had left for work. His wife, their two infant daughters and a younger sister of Mrs. Ogden were asleep in the home when the fire erupted. There is no indication that the fire officials reported or *892 suspected intentional incendiary activities. Attached to the reply affidavit of attorney James J. Devine is a statement of one Les Miles, a volunteer fireman and acting first assistant chief. He states that there was nothing suspicious about the fire.
On April 24,1980 a representative of Allstate visited the scene of the loss. On April 25, 1980 an arson investigator was hired by Allstate. It is said that he concluded that the fire was of suspicious origin. Counsel was retained by the insurance company on May 23,1980. On June 27,1980 the plaintiffs submitted proofs of loss, and they were examined under oath on July 18, 1980 and August 26,1980. There is absolutely no evidence that Allstate ever imparted to the plaintiffs its position that it was declining coverage. On November 24,1980 this action was commenced, and it was on December 22, 1980 that Allstate submitted its answer and, for what appears to be the first time, it indicated its refusal to pay under the terms of the contract.
The court will address the request by plaintiffs that Allstate produce for an examination before trial the person or persons who conducted the factual investigation of this fire loss, to disclose the substances which were inspected and removed, to identify the tests to which those substances were subjected and for such other similar relief as would be proper. A determination of this request for relief will be dispositive of the request for preclusion.
CPLR 3101 (subd [a]) provides that there shall be a full disclosure of all evidence material and necessary in the prosecution or defense of an action without regard to the burden of proof. It has been declared that the term “material and necessary” is equated with that which would be useful in sharpening the issues and reducing delay (Allen v Crowell-Collier Pub. Co., 21 NY2d 403).
Exceptions have been engrafted upon the liberal disclosure provisions of the CPLR, and these include material which has been prepared for litigation. Embraced within this category are opinions of an expert which have been prepared for a lawsuit or any writing created by a party or his agent in preparation for litigation.
*893 It is well settled that a party which asserts a claim of privilege from discovery has the burden of establishing such an exemption (Koump v Smith, 25 NY2d 287; Yannick v Tube City Iron & Metal Co., 77 AD2d 623). In the latter cited case, the court noted that there was a failure to meet the burden in the absence of an affidavit indicating when, if ever, the insurer rejected or decided to reject the claim of the insured.
Initially, a distinction should be recognized between those cases involving liability insurance and those where first-party coverage is afforded. In Kandel v Tocher (22 AD2d 513) automobile liability insurance was characterized as litigation insurance, and the court noted that the situation is quite different with respect to coverage other than liability insurance. In Welch v Globe Ind. Co. (25 AD2d 70) the court again distinguished between indemnity and liability coverage. In the case of a liability insurer, it was noted in Kandel v Tocher (supra) that there is little or nothing that the insurer or its employees do with respect to an accident report except in contemplation and in preparation for eventual litigation or for a settlement which may avoid the necessity of litigation. This, of course, is not the case with indemnity coverage where routine investigations are conducted for purposes such as examining the extent of the loss, determining whether there is a potential for recoupment against, a third party, obtaining information which would assist in avoiding recurrences of that type of loss, providing input for underwriting purposes and a multitude of other ends to be achieved. These, of course, have nothing to do with considerations of coverage.
In Welch v Globe Ind. Co. (supra), the court allowed discovery of the reports and investigation made by an adjuster of the defendant company, stating that there was no specific showing that the matter sought to be examined was prepared for litigation. In Mold Maintenance Serv. v General Acc. Fire & Life Assur. Corp. (56 AD2d 134) an application similar to that presented to this court was reviewed. Resistance to discovery was offered on the premise that the material was prepared for litigation. In arriving at a judgment as to whether this assertion was factual, the court noted that the loss occurred on January 21, 1975, *894 and the defendant was notified of the occurrence on January 24, 1975. In February and March an expert was hired and inspected the property. It was said that the defendant did not have any reason to question the propriety of the expected claim at that time. It went on to note that for the defendant to assert that it was contemplating a disclaimer before ascertaining the facts would indicate bad faith on its part. The court permitted discovery of the facts observed by the expert as they were contained in his report, observing that it was particularly applicable in that case, where the facts can no longer be ascertained by an inspection of the premises. It was stated with some emphasis that in the absence of a bona fide showing that defendant had reasonable grounds for disclaiming and so employed an expert in preparation for expécted litigation, such a report would not be considered privileged as against the insured.
There have been occasions when discovery has not been allowed as in Foremost Ins. Co. v 3 Grace Ave. (58 AD2d 590) where counsel for the plaintiff conducted an investigation in anticipation of a claim. In that case the fire marshal termed the blaze as incendiary, and the court felt that under such circumstances the retention of counsel and the investigation were in contemplation of litigation. In Seaview Chef v Transamerica Ins. Co. (61 AD2d 1043) discovery of the expert’s reports was denied where the fire which produced the loss was characterized by the fire department as being suspicious in origin. Under such circumstances it was felt that the insurer had a substantial bona fide reason to investigate the legitimacy of the claim even though it had not rejected coverage prior to the investigation by the expert. In Abraham v Hanover Ins. Co. (66 AD2d 808) the fire loss was considered suspicious by the police and fire officials. The insured had substantially increased its coverage within a short time before the loss. The insurance company did not disclaim until after the insured had been examined and after an arson investigator had examined the premises. In that setting, it was said that the arson investigator’s report was privileged, since it was prepared exclusively in anticipation of litigation. A similar result was reached in Rossi v Hartford Fire Ins. Co. *895 (72 AD2d 548) when the local authorities determined the fire to have been “unquestionable arson”.
All of these cases are distinguishable from the one at hand in that in each case the insured’s carrier was put on notice by the local fire officials that the origin of the blaze was either suspicious or was definitely incendiary or the result of arson. The factual pattern presented in the instant case does not contain such a circumstance. The reverse is, in fact, the situation. That is, the officials could find nothing of a suspicious nature about the fire. At no time during the several months which elapsed from the date of the loss until this action was begun did Allstate ever share with their insured any thought, idea or suggestion that coverage would not be afforded. If anything, the insured could have entertained thoughts that Allstate was conducting its investigation in anticipation of payment. It does not seem that an unfair or intolerable burden would have been imposed upon Allstate to require them to inform their insureds that, in their view, the fire was suspicious or that they were anticipating litigation or that they were rejecting coverage. If such candor had been observed, perhaps their insureds could have been preparing for litigation by hiring experts, examining the premises and perpetuating proof for presentation in an effort to resolve what could have been, but which weren’t, manifest differences. For all the insured knew, there were no differencés. Such a manner of operation by an insurance carrier does leave the insured in a position of disadvantage, for while the company is marshaling all sorts of evidence, the insured is lulled into doing nothing by the failure of the carrier to bare its thoughts.
There is another aspect of the relationship which impresses this court, and which should be given some substantive expression. Insurance companies circumstanced as Allstate is in this case are in the business of contracting for the payment to individuals upon the occurrence of losses of the ilk demonstrated herein. Such insurance companies have as resources the experience of day-to-day operations in the handling of these losses together with the availability of expert personnel to either establish a position which they would like to take or fortify one which they *896 have already taken. The ordinary insured is not so blessed. He or she or possibly it is generally not worldly in the business of insurance losses or the procedures followed in obtaining payment for such losses. Such insureds usually do not realize the need for the preservation and perpetuation of proof, nor are they sufficiently educated or endowed to take all of the other steps necessary to protect rights afforded them in the contract which they make with such insurance companies. When disparate relationships are extant, there should be a minimum of openness, forthrightness or candor required of such companies in their dealings with their insureds. They should not be permitted to garner unto themselves all sorts of evidence concerning the origins of a loss, as we have in this case/ without having imposed upon them a duty to advise their insureds of the purposes of the investigation and the prospect of some type of litigation. In this instance Allstate says that they were preparing for litigation, but at the same time their insured was not aware of this fact and is now disadvantaged because of the lack of availability of material by which an effective investigation could be conducted. Reference is made to the affidavit of John G. Sessler relating to the dissipation of any liquid hydrocarbon substance, if any was in fact found at the premises of the plaintiffs.
In view of the observations made, the motion of the plaintiffs to take the testimony of the expert or experts who examined their property on behalf of Allstate is granted. As was observed in Ortung Piano & Organ Co. v Aetna Cas. & Sur. Co. (75 AD2d 845, 845-846): “Therefore, information concerning investigations conducted and reports prepared in connection therewith prior to defendant’s rejection of plaintiffs’ claim, should be disclosed. As to any expert reports, defendant need only reveal the factual observations of such experts as contained in said reports. Further, plaintiffs are entitled to know on what basis defendant rejected their claim, and the name and address of any individual who allegedly participated in causing the fire. Finally, plaintiffs are entitled to any photographs which may have been taken, the material used for any chemical analyses if still available, and if not available, *897 the results of any chemical analyses if done which, due to changed circumstances can no longer be duplicated.”
Since discovery is being allowed, there would appear to be no compelling reason for any further elaboration by the defendant in a bill of particulars. The motion to preclude is denied without prejudice to another application in the event that the discovery is not productive of the items sought in the bill of particulars.
The examination of the expert should be conducted within 30 days of the service of an order upon this decision with notice of entry upon the attorneys for the defendant, Allstate.