OPINION OF THE COURT
Leo F. Hayes, J.
Plaintiff has demanded a copy of any accident report made by defendant or her insurance carrier relative to the auto accident this lawsuit deals with.
Defendant now moves for a protective order on the theory that CPLR 3101 (subd [d]) excludes from discovery the accident report as material prepared for litigation. Subdivision (d) excludes: “2. any writing or anything created by or for a party or his agent in preparation for litigation.”
Plaintiff says the report is discoverable under CPLR 3101 (subd [g]): “Accident reports. Except as is otherwise provided by law, in addition to any other matter which may be subject to disclosure, there shall be full disclosure of any written report of an accident prepared in the regular course of business operations or practices of any person, firm, corporation, association or other public or private entity, unless prepared by a police or peace officer for a criminal investigation or prosecution and disclosure would interfere with a criminal investigation or prosecution.”
Despite what appears to be the clear mandate of the statute, defendant insists that the Legislature did not really intend to make discoverable “any [noncriminal] *620 written report of an accident prepared in the regular course of business operations or practices of any * * * corporation”. According to the defendant — at least according to certain authorities cited by the defendant — the Legislature simply forgot to write into subdivision (g) the important qualification that any noncriminal accident report is discoverable “unless prepared exclusively for litigation.” All that the Legislature really meant to do, goes the argument, was to codify existing law, which, under the Kandel-Finegold rule, would have exempted from discovery the reports of an auto insurer (see Kandel v Tocher, 22 AD2d 513).
This case brings into sharp focus the judiciary’s role in carrying out the will of the lawmakers — or more accurately, the court’s duty to carry out their will according to the following principles:
1. If a statute is plain and unambiguous, it should be applied as written without resort to other means of interpretation (McKinney’s Cons Laws of NY, Book 1, Statutes, §76).
2. If there is an apparent conflict between two statutes, the court should make every effort to harmonize them (McKinney’s Cons Laws of NY, Book 1, Statutes, § 98, subd b).
3. If, and only if, it is impossible to harmonize the conflict, the court should try to ascertain and preserve the. paramount intention of the Legislature (McKinney’s Cons Laws of NY, Book 1, Statutes, § 98, subd b).
4. In seeking out the legislative intent, the court should look first and foremost to the actual language of the statute, since the Legislature is presumed to mean what it says (McKinney’s Cons Laws of NY, Book 1, Statutes, § 94).
5. If doubt still remains, the court may then — but only then — resort to the extrinsic matters (legislative history) as an aid to finding the intent of the Legislature.
In my view, the solution to the present issue can be found without going past the second step, by harmonizing subdivisions (d) and (g) along these lines: subdivision (d) protects the broad range of material prepared exclusively for litigation; subdivision (g) singles out one limited portion of those materials — accident reports — and makes them *621 discoverable. Read together, the two subdivisions proclaim: “Materials prepared for litigation are not obtainable, except for [noncriminal] accident reports prepared in the regular course of business.”
In Pataki v Kiseda (80 AD2d 100, 103-104) the court thought it necessary to move to the next step (4) because it felt there was an irreconcilable conflict between subdivision (d) and (g): “All accident reports, whether or not prepared exclusively in preparation for litigation, are discoverable. We reach this conclusion primarily on the basis of the wording of the respective subdivisions. Subdivision (d) (par 2) is a broad statute, extending to anything prepared for litigation, including much more than accident reports. Subdivision (g) speaks specifically of accident reports, and from its more limited and precise focus, it can be inferred that within its narrow scope, it is to be paramount to other, broader provisions. On the other hand, within that narrow scope, subdivision (g) encompasses all accident reports regardless of purpose, with one narrow exception dealing with criminal investigations or prosecutions. No exception is listed for reports prepared exclusively for litigation. It would seem that the paramount intention of the Legislature was to render all accident reports not falling within that one exception discoverable.”
Later cases continued the search for legislative intent, but unlike Pataki, carried the analysis into the realm of legislative history. Relying on certain documents extrinsic to the statute, these later cases held that the Legislature did not really intend to make an insurer’s accident report discoverable (Masters v Hassenpflug, 110 Misc 2d 998; Ellis v County of Broome, 112 Misc 2d 19).
In particular, great weight was placed on a recently published statement of the sponsor of subdivision (g) that the new legislation was an accurate codification of the prior case law. Here is the relevant portion of Assemblyman Miller’s memorandum:
“‘Civil Practice Law and Rules: § 3101. The purpose of this bill is to make accident reports subject to pretrial disclosure in civil litigation when prepared from the usual business operations or practices of any person or entity, *622 except as otherwise provided by law. Accident reports prepared by a police officer or a peace officer for a criminal investigation, and retained for such purpose, are not subject to disclosure.
“ ‘The courts have generally permitted the discovery of accident reports or investigation statements that result from the regular internal operation of an enterprise, authority or business, because such documents generally are not prepared exclusively for litigation, although ultimately they may be utilized for purposes of negotiation or litigating personal injury or property damage claims resulting from accidents. This hill accurately codifies existing decisional law.’ (NY Legis Ann, 1980, p 131; emphasis supplied.)” (Ellis v County of Broome, supra, pp 21-22.)
Whether the Assemblyman meant to imply that his bill accurately codified all existing decisional law — including the Kandel-Finegold rule which he entirely omitted from his comments — is not clear. But the meaning of a statute should derive, if at all possible, from what the statute says and should not turn on the sometimes incomplete or inaccurate remarks made during the legislative process.
Respectfully I disagree with the use of extrinsic documents in this case. Here, the apparent statutory conflict can either be harmonized or, if not, the intent of the Legislature can be adequately discerned from the language the lawmakers deliberatively choose (á la Pataki). This being the case, I can see no reason to go beyond what the Legislature has done in a quest to determine what it might have done. “The function of the courts is to enforce statutes, not to usurp the power of legislation, and to interpret a statute where there is no need for interpretation, to conjecture about or to add to or to subtract from words having a definite meaning, or to engraft exceptions where none exist are trespasses by a court upon the legislative domain.” (McKinney’s Cons Laws of NY, Book 1, Statutes, §76, Ann.)
I read the statute as mandating discovery of accident reports, with the one exception not herein presented. Accordingly, the motion to compel discovery is granted.