OPINION OF THE COURT
Jeffrey G. Stark, J.
May a corporation which has employees prepare accident reports in the ordinary course of business immunize the reports from disclosure by regularly forwarding such reports to its insurer? The question arises from the recent decision in Vernet v Gilbert (90 AD2d 846, 847), wherein the Second Department drew a “sharp distinction” between reports intended for insurers, which are immune, and reports which result from the regular internal operations of the business, which are not. For the reasons that follow, the court holds that accident reports made in the ordinary course of business are not immune unless the party resist *458 ing disclosure can demonstrate that the reports are required by the insurer and are not utilized for any other internal corporate purposes. On the facts of this case, the corporate defendant has failed to sustain its burden of such proof, and the report at issue must therefore be disclosed.
FACTS
Plaintiff Mary Blasi was allegedly injured by a broken Coca-Cola bottle when shopping in a Pathmark Supermarket operated by defendant third-party plaintiff Supermarkets General Corp. At a pretrial examination of Luther Manley, a Pathmark employee who was present when the accident occurred, Mr. Manley disclosed that he had prepared an “incident investigation report” immediately after the accident.
On cross-examination, Mr. Manley acknowledged that it was store policy after an accident to “ask people what happened,” and that in such cases “there is a report made out in the regular course of business.” He explained that one copy of the report is routinely sent to the legal department of Supermarkets General, one copy is kept at the store, and two copies are sent to the central office. As far as the papers before the court show, Mr. Manley made no mention at the deposition of a company policy or practice with regard to forwarding the report to the company insurer.
Plaintiffs’ counsel requested a copy of the report at the deposition, but counsel for Supermarkets General objected. Plaintiffs thereafter served a notice seeking disclosure of the report, prompting the instant motion for an order vacating plaintiffs’ notice.
Supermarkets General contends that the report is immune from disclosure. In so doing, it has not submitted an affidavit from a corporation official or in-house counsel with personal knowledge of company policies and practices. Rather, an affirmation of outside litigation counsel asserts that the report “was not prepared for the internal operation of the defendant’s retail food store,” and that the corporation “does not rely on the reports to prevent future accidents, to discipline employees or to improve efficiency.” Counsel asserts further that after the report is reviewed by *459 the legal department “[t]he report in question is then forwarded directly to the defendant third-party plaintiff’s liability insurance carrier.”
Relying upon Vernet v Gilbert (90 AD2d 846, supra) and Vogl v Kilmer Realty Corp. (118 Misc 2d 611), counsel argues that the report “was prepared exclusively in connection with the reporting of this incident to the defendant’s liability insurer” and is therefore exempt.
In opposition, plaintiffs’ attorney quotes extensively from the deposition of Luther Manley and argues that the report is not immune since it was prepared in the ordinary course of business. Plaintiffs in turn rely upon Pataki v Kiseda (80 AD2d 100, mot for lv to app dsmd 54 NY2d 831) and Stein v Trump Vil. Section No. 4 (118 Misc 2d 344), which they claim establish that accident reports made in the ordinary course of business are per se discoverable.
DISCUSSION
Prior to 1980, a showing that litigation was the sole motive for preparation of an accident report was sufficient to immunize it conditionally from disclosure under CPLR 3101.[1] (See Braun v Great Atlantic & Pacific Tea Co., 67 AD2d 898; Siegel, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C310L33, p 10,1982-1983 Pocket Part.) The rule was one and the same for reports to attorneys and those made to insurers. (See Kandel v Tocher, 22 AD2d 513, 516-518.)
In 1980, however, the Legislature amended CPLR 3101 by the addition of subdivision (g), the intent of which was to liberalize the rules regarding disclosure of accident reports prepared for litigation purposes. (See Siegel, op. cit.; Chaplin v Pathmark Supermarkets, 107 Misc 2d 541, 541-543.) The statute as amended now provides that “there shall be full disclosure of any written report of an accident prepared in the regular course of business * * * unless prepared by a police or peace officer for a criminal investigation or prosecution” (CPLR 3101, subd [g]).
*460 In Pataki v Kiseda the Second Department construed this provision as permitting discovery of all accident reports prepared in the regular course of business, “whether or not prepared exclusively in preparation for litigation” (80 AD2d 100, 103, supra; emphasis in original). In Vernet v Gilbert (supra, p 847), however, the court qualified the broad language used in Pataki, stating that there is “a sharp distinction * * * between accident reports which result from the regular internal operations of any enterprise,” found discoverable in Pataki, and those which are made “in connection with the report of an accident to a liability insurer” which are conditionally exempt from disclosure under Kandel v Tocher (22 AD2d 513, supra) and Finegold v Lewis (22 AD2d 447). The court added “[t]here is no indication that the Legislature, in enacting CPLR 3101 (subd [g]) intended to obviate the long-standing decisional rule applicable in the latter instance.” (90 AD2d, at p 847.)
Subsequent lower court decisions have proven that the distinction drawn in Vernet is not as “sharp” and clear as the Second Department endeavored to establish. (See 2 Judges Differ on Discovery Change in CPLR, NYLJ, April 13,1983, p 1, col 4, reporting on Stein v Trump Vil. Section No. 4, 118 Misc 2d 344, supra, and Vogl v Kilmer Realty Corp., 118 Misc 2d 611, supra.)
In Vogl (supra, p 613), Mr. Justice Eli Wager gave Vernet (supra) a broad reading, stating that “in this department at least, accident reports prepared for an insurer are conditionally exempt from discovery.” Based upon the finding that the report in question was given by an employee of one defendant to a codefendant’s insurer, the court determined that the report was exempt without reaching the question of whether the report was prepared in the regular course of business.
In contrast, in Stein (118 Misc 2d 344, supra), Mr. Justice Arthur S. Hirsch gave Vernet (supra) a much more limited reading. While reports taken “by or for carriers” (p 346) of the insured’s employees are exempt under Vernet and Cornell Mfg. Co. v Mushlin (85 AD2d 592), in his opinion “[r]eports made by the defendant’s employees of an accident * * * are reports taken in the regular operation of *461 business and will be available for discovery” (118 Misc 2d, at p 346; emphasis added). In Justice Hirsch’s view, a narrow construction of the “report to insurer” language in Vernet is essential to effectuate the legislative intent behind the statutory amendment. Otherwise, it would be but “a simple matter to arrange for an employee to give his report directly to the firm’s attorney or the agent of its insurance carrier”, thus protecting the report from disclosure. (118 Misc 2d, at p 347.)
This case provides another opportunity to harmonize (if possible) Pataki and Vernet (supra). On the one hand, since the accident report at issue resulted from the regular internal operations of Supermarkets General, it appears to be discoverable under Pataki. On the other hand, since the report was allegedly forwarded to the liability insurer, it is arguable that it is immune from disclosure under Vernet.
In attempting to harmonize Pataki and Vernet (supra),[2] the court adopts neither the holding of Stein nor Vogl (supra). The court cannot agree with the conclusion in Stein that reports made by employees, even if intended solely for insurers, are per se reports made in the ordinary course of business which are always discoverable. But neither can the court accept the holding in Vogl that the preparation of an accident report for forwarding to an insurer obviates the need to determine whether it was made in the ordinary course of business for other purposes as well.
This court holds instead that a company which has a regular reporting practice carries the burden of showing that an accident report was made exclusively for the insurer, and not for any other business purpose. (Cf. Siegel, op. cit., 03101:33, p 10.)[3] Such a rule rests upon the commonsense presumption that a company which has a *462 regular reporting practice “surely wants information designed to prevent a recurrence” of the accident as well as for defense litigation purposes. (Id., p 11.) This rule does not preclude an insurer, however, from setting up a direct reporting procedure to enable it to obtain prompt information about accidents without fear of subsequent disclosure. (See Kandel v Tocher, 22 AD2d 513, 517, supra [“It is of the greatest importance that an insured be encouraged to make complete and candid disclosure to his liability insurer.”]; cf. Braun v Great Atlantic & Pacific Tea Co., 67 AD2d 898, supra.)
Applying the above rule to the case at bar, the court finds that Supermarkets General has failed to carry its burden. Luther Manley’s testimony at the pretrial examination established that Supermarkets General has a regular reporting practice, giving rise to a presumption that such reports are prepared in the ordinary course of business and not exclusively for litigation purposes. This presumption is strengthened by Manley’s admission that copies are forwarded not only to the corporate attorney, but also to various company files. Based upon these facts, sworn to by an employee with personal knowledge of the defendant’s practices, the “conclusory assertions” of defendant’s attorney that the report was exclusively prepared for the insurer is not sufficient to carry the day. (Cf. Viruet v City of New York, 97 AD2d 435.)[4]
In conclusion, the court holds that routine accident reports which are forwarded to insurers are neither per se discoverable nor always immune. Although a defendant may resist disclosure by establishing that such routine reports are prepared solely for its insurer and are not used for any other purpose, the defendant in this case has failed to meet this burden and therefore the accident report at issue must be disclosed.

. CPLR 3101 (subd [d], par 2) provides that “any writing * * * created by or for a party or his agent in preparation for litigation” is exempt from disclosure “unless the court finds that the material can no longer be duplicated because of a change in conditions and that withholding it will result in injustice or undue hardship”.

. It is of interest that two of the Justices who decided Pataki sat on the panel in Vernet.

. Although Professor Siegel suggested this analysis in a commentary written prior to Pataki concerning when reports to attorneys should be disclosed, its logic is equally applicable to reports to insurers and hence is adopted here. The rules governing disclosure of reports to insurers evolved from cases concerning disclosure of reports to attorneys (see Kandel v Tocher, 22 AD2d 513) and as a matter of policy and logic the court sees no basis to distinguish them. While it is possible to read Pataki and Vernet as distinguishing reports to insurers from reports to attorneys, this court will not do so absent a clearer expression from the Second Department.

. To the extent that defendant contends the report is immune as material prepared exclusively for defendant’s attorney, the same analysis applies. (See n 3, supra.)