# CIRCUIT COURT OF LOUDOUN COUNTY

Patsy Diane Larson

v.

Marjorie S. McGuire

January 15, 1997

Case No. (Law) 17857

BY JUDGE THOMAS D. HORNE

The Defendant in this personal injury action seeks to shield from pre-trial discovery disclosure certain materials which she contends constitute work product gathered for trial or in anticipation of litigation. Certain of the items have been submitted to the Court for *in camera* inspection.

In her motion for judgment, Patsy Diane Larson contends she was injured when the car which she was driving was struck from behind by a vehicle driven by Marjorie S. McGuire. At the time of the accident, Ms. Larson was stopped for a red light on Edwards Ferry Road at its intersection with the Route 15 By-Pass in the Town of Leesburg. The accident occurred on March 29, 1993. In an excerpt from the deposition of the defendant submitted by the plaintiff in connection with the instant motions to compel, Ms. McGuire made the following responses to questions asked by plaintiff's counsel:

Q. (Mr. Wakefield) You mentioned that just before you looked up to see brake lights, you were looking down; is that correct?

A. (Ms. McGuire) No, I wasn't looking down.

Q. (Mr. Wakefield) Did there ever come a time when you were looking either to your left or to your right away from the road?
A. (Ms. McGuire) Yes.
Q. (Mr. Wakefield) Which way were you looking?
A. (Ms. McGuire) To the left.
Q. (Mr. Wakefield) What were you looking at?
A. (Ms. McGuire) I was looking at a restaurant, Ruby Tuesday.
Q. (Mr. Wakefield) How long did you have your head turned that way?
A. (Ms. McGuire) One second, one-and-a-half, no more than two.
Q. (Mr. Wakefield) As you moved your head back to the straight ahead position, is that when you saw Ms. Larson in front of you?
A. (Ms. McGuire) Yes, it is.

Counsel for the plaintiff contrasts this testimony with defendant's response to interrogatory number 14, in which the following question and answer are to be found.

> *Question*: If you allege that the plaintiff was guilty of negligence which proximately caused or contributed to the cause of the accident or injuries suffered by plaintiff, please state all facts on which you will rely as tending to show that the plaintiff was negligent and please state the name, address, and telephone number of all persons having relevant knowledge of such.
> *Answer*: It was obvious the plaintiff wasn't watching what she was doing since she slammed on her brakes, which caused me to have to slam on my brakes, and I did tap her in the rear, but if I had one more foot to go, I would not have touched her.

No further response is given as to how "it was obvious" that Ms. Larson was at fault in the accident. When read in connection with the testimony of the defendant that for a second or two immediately before the accident she was looking left at a restaurant, it is uncertain to the reader as to whether defendant suggests that the accident was caused by her inattention or by that of the plaintiff.

It would appear from a review of the record that Ms. McGuire reported the accident to her insurer, the Nationwide Mutual Insurance Company, on March 30, 1993. An adjuster for Nationwide shortly thereafter made contact with the insured and others. Counsel for the defendant has represented that the Nationwide file relating to the adjuster's investigation of the accident is not complete. Moreover, he has stated that should a statement by the plaintiff taken during the course of Nationwide's investigation be located, he will

immediately supplement discovery and make such statement available to the plaintiff. Otherwise, counsel for the defendant challenges the right of the plaintiff to the discovery of the few documents produced for *in camera* review.

After litigation had commenced, the defendant caused a video to be taken of the plaintiff for possible use at trial. This video is unquestionably work product prepared in connection with the instant action. Defendant has agreed to make the video available for review by the plaintiff *in the event she elects to make use of it at trial.*

A number of circuit courts throughout the Commonwealth have wrestled with the issue of the proper interpretation to be given Rule 4:1(b)(3) of the Rules of the Virginia Supreme Court as it pertains to materials prepared in anticipation of litigation. That Rule reads in relevant part:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this Rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

The opinions expressed by these courts are many and varied in approach. Thus, reports and witness statements prepared or taken by claims adjusters within days of the date of an accident out of which a claim has arisen, have been the subject of disclosure by some courts and protection by others. This Court first addressed the issue in *Whitehurst v. Lloyd*, 37 Va. Cir. 224 (1995).

In *Whitehurst, supra*, this Court relied upon the opinion of Judge Markow in *Smith v. National Railroad Passenger Corp.*, 22 Va. Cir. 348 (1991), in which that court adopted the "reasonably foreseeable" test suggested in an article by W. T. Benson entitled, *Corporation and Institutional Accident Investigations as Work Product Pursuant to the Rules of the Supreme Court of Virginia*, 17 U. Rich. L. Rev. 285 (1983). Judge Markow rejected the application of a mechanical test which would force disclosure of such materials as having been prepared in the ordinary course of business of the insurer. He, like Benson, noted that when carried to its logical conclusion, the application of such a work product rule would mandate production of materials prepared by an attorney, as the Court Rule does not limit itself to those materials prepared by or at the direction of counsel. It is, without question,

within the ordinary course of business of an attorney's trial preparation for him to collect such materials as those obtained by the adjuster.

The origin of the "work product" rule finds its roots in the case of *Hickman v. Taylor*, 329 U.S. 510 (1946), and is predicated upon the principle that an attorney should be free to properly prepare his case and "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id.* at 511. The Court in *Hickman* further observed:

> [t]hat is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. The work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways .... Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served. *Id.*

As noted earlier, the Rule does not confine itself to the work product of the attorney but extends to others involved in the adversary process, including the party's "consultant, surety, indemnitor, insurer, or agent."

Regardless of the test to be applied under the Rule, the burden of demonstrating the preclusive effect of the privilege to a given set of facts rests upon the party raising the privilege. Once the party asserting the privilege has met that burden, then the other party must prove a substantial need of the materials and an inability, without undue hardship, to obtain the substantial equivalent of the materials by other means. As the Court observed in *Rakes v. Fulcher*, 210 Va. 542, 547 (1970):

> [d]iscovery procedures were not intended to open an attorney's files to opposing counsel; nor were they intended to afford an attorney the luxury of having opposing counsel investigate the case for him.

In *Hickman, supra*, the Supreme Court first addressed the application of the "work product" privilege to material sought under Rules 26 and 33 of the Federal Rules of Civil Procedure. Justice Jackson, in a concurring opinion,

observed that "[d]iscovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Id.* at 516.

The Fourth Circuit Court of Appeals has addressed the issue of the discovery of statements given by the defendant and witness to an insurance claims adjuster shortly after an automobile accident in which the plaintiff was severely injured. *McDougall v. Dunn,* 468 F.2d 468 (4th Cir. 1972). In *McDougall,* the plaintiff received serious brain injuries when the car in which he was a passenger struck a tree. The accident occurred on the evening of February 2, 1968, or the early morning of February 3. Shortly after the accident, the driver of the vehicle and another passenger gave statements to a claims adjuster for the defendant's insurance carrier. Suit was not brought and counsel employed by the plaintiff until two and one-half years after the accident. During the remainder of 1968, the plaintiff was hospitalized at various institutions as a result of the brain injuries he sustained.

In resisting discovery, the defendant, Dunn, asserted that the statements were prepared in anticipation of litigation or for trial and were discoverable only upon a showing of good cause as defined in Rule 26(b)(3), incorporated in the 1970 Rules Amendments. Although noting the existence of cause for disclosure under the Rule, the Court reflected upon the finding by a Federal District Court that such statements to an adjuster did not represent the employment of an attorney's expertise and are conclusively presumed to have been made in the ordinary course of business of the insurance company. Thus, the District Court reasoned, such statements do not fall within the ambit of the limited privilege of Rule 26(b)(3). *Thomas Organ Co. v. Jadranska Plovidba,* 54 F.R.D. 367, 372 (N.D. Ill. 1972).

Significantly, the Court in *McDougall* was not content with its reliance on the work product rationale of *Thomas Organ* and went on to find that the request met the requirement of the Rule that the plaintiff show a substantial need and undue hardship in obtaining such material. The Court in *McDougall* reasoned both a hardship and need existed so as to compel disclosure although spending little time in a discussion as to whether, if not prepared in the ordinary course of business, such documents were otherwise not prepared in anticipation of litigation.

Defendant, in the instant case, has met her burden of demonstrating that the statements taken and reports made by Nationwide after the accident were work product prepared in anticipation of litigation. In addition, she has shown the videotape to have been prepared for possible use at the trial of the case. Counsel for the defendant has represented that he will make the tape available prior to trial in the event he elects to make use of it. Fairness would dictate that

the videotape material be made available to the plaintiff in sufficient time for the plaintiff to take additional discovery as to its contents.

Judge Vieregg, in his thorough and well-reasoned analysis of the issue noted the distinction between those cases involving first party insurance and those which involve third party or liability insurance. *McCullough v. Standard Pressing Machines Co.*, 39 Va. Cir. 191 (1996). Thus, some courts have reasoned that, once an accident has arisen, which implicated liability coverage, everything done is "in contemplation of and in preparation for eventual litigation or for settlement that may avoid the necessity of litigation." *Kandel v. Tocher*, 22 App. Div. 2d 513, 256 N.Y.S.2d 898 (1st Dept. 1965); 84 A.L.R. 4th 15, *Discovery of Traffic Accident Reports and Derivative Information*, Section 8(b) at 64. However, this Court, like Judge Vieregg, does not find that the application of the Rule is susceptible to such a bright line test as that delineated in either *Thomas Organ, supra,* or *Kandel, supra.* The adoption of a purely objective standard of reasonable foreseeability furthers the purpose of the Rule to avoid unreasonable intrusions into the files of would-be litigants, yet affording access to those able to show demonstrable hardship and need in the event discovery would otherwise be denied. *See,* e.g., *Ex parte State Farm Mut. Auto. Ins. Co.*, 386 So. 2d 1133 (Ala. 1980), 84 A.L.R. 4th at 61.

In this case, the Court is limited at this stage of the proceeding to a consideration of the pleadings filed, the discovery request and related exhibits, and the arguments of counsel. The motion for judgment describes a rear-end collision in which the plaintiff was severely injured. Third party liability coverage is implicated. Ms. Larson seeks recovery in the amount of $500,000.00.

Common sense would suggest there is nothing routine about such an investigation as would follow in this case. While the reports made by the adjuster containing statements made by witnesses other than the plaintiff are entitled to the claim of privilege, plaintiff has articulated a showing of need and demonstrable hardship requiring disclosure.

Absent disclosure, plaintiff would be deprived of access to statements which were arguably used in the preparation of the interrogatory responses of the defendant. These statements would have been taken shortly after the accident and would serve as a basis for understanding defendant's claim of contributory negligence, as that claim is now clouded by deposition testimony. In addition, it is important that the parties be able to fully explore inconsistencies and ambiguities in the testimony of the opposing party during the discovery process. Not only may such statements be used to prove an element of a party's claim but may also serve as a means of impeachment. Accordingly, the court will, except as to the videotape, insofar as protection

from disclosure is requested based upon their having been prepared in anticipation of litigation, grant the motion of the plaintiff to produce the materials submitted for *in camera* inspection.

Defendant need only produce the video in the event it is to be used at the trial of the case for any purpose. Plaintiff fails to demonstrate a substantial need unless it were to be so utilized. As counsel for Ms. McGuire has represented, they will make such video available should they elect to use it at trial, no further direction from the Court is necessary except to require production in sufficient time that plaintiff may engage in discovery with respect to the video. *See generally,* Annotation, *Discovery of Surveillance Photographs,* 19 A.L.R. 4th 1236.

Thus, the Court makes the following findings with respect to the Plaintiff's Motion to Compel.

*Interrogatory Number Two*: This interrogatory requests the names of all persons who knew anything about the accident, including investigators. The Court agrees that, as drafted, this interrogatory is overly broad and burdensome. The motion to compel is denied.

*Interrogatory Number Three*: This interrogatory asks that the defendant identify and describe any statements, written or oral, made by the defendant or plaintiff or any witness. For the reasons stated above, the motion to compel will be granted.

*Interrogatories Seventeen and Eighteen*: Plaintiff asks that the defendant state her position as to whether plaintiff's injuries are causally related to the accident and the medical necessity of plaintiff's medical treatment. As the independent medical examination has been completed, the defendant will be directed to respond to this interrogatory within fifteen days. The motion to compel is granted.

*Interrogatory Nineteen*: Defendant is to respond to this request concerning the authenticity, reasonableness, medical necessity, and causal relationship of plaintiff's medical bills within fifteen days. The motion to compel is granted.

*Interrogatory Twenty*: Plaintiff has requested information concerning surveillance activity undertaken by the defendant. As noted above, this information is protected work product subject to disclosure upon a showing that there is a substantial need of the materials in the preparation of her case and that she is unable without undue hardship to obtain the substantial equivalent of the materials by other means. No such showing has been made so long as such surveillance activity is not to be used at trial. In the event defendant elects to use this evidence, she shall timely supplement this interrogatory and produce the video, as proffered to the Court, at least sixty days prior to the cut-off of discovery.

*Interrogatory Twenty-three*: Plaintiff has requested the names of persons having a knowledge of the facts involved in the case. As·written, the interrogatory is overly broad. The motion to compel is denied.

*Interrogatory Twenty-four*: Defendant should respond by identifying those statements which she contends are admissions or declarations against interest made by the parties. The motion to compel is granted.

*Interrogatory Twenty-five*: This interrogatory requests that the defendant state whether she has ever discussed the facts of the claim with any of the parties to the litigation or with representatives of the defendant. For the reasons set forth above, the motion is granted, except as to those matters protected by the attorney client privilege.

*Interrogatory Twenty-six*: Defendant should respond to this identity of expert request and must respond to the interrogatory when the information becomes available. The motion to compel is granted.

*Request for Production of Documents Number One*: Statements from witnesses are discussed *supra*. Production is ordered.

*Request for Production of Documents Number Two*: Plaintiff has requested investigative reports and the reports of experts. See discussion, *supra*. Production is ordered. Reports of experts are governed by Rules 4:1(b)(4) and 4:10(c)(1).

*Request for Production of Documents Number Three*: Plaintiff requests statements taken from people not eyewitness. See discussion, *supra*. Production is ordered.

*Request for Production of Documents Number Four*: Plaintiff requests production of statements taken from the defendant which are work product. For the reasons set forth above, the request is granted.

*Request for Production of Documents Number Five*: If a statement of the plaintiff is found, defendant shall, consistent with her representations to the Court, forthwith produce it to the plaintiff.

*Request for Production of Documents Number Fourteen*: Plaintiff shall be furnished the documents requested upon payment of one-half of the costs of reproduction already expended by the defendant.

*Request for Production of Documents Number Fifteen*: Documents and records of any surveillance activity is covered by the Court, *supra*. In the event that the defendant elects to use such material, it shall be disclosed.