**Sam W. AIENA, et al., Plaintiffs,**

v.

**David A. OLSEN, et al., Defendants.**

**No. 97 CIV. 8713(LAK).**

United States District Court,
S.D. New York.

June 22, 2000.

Michael L. Hirschfeld, Milbank, Tweed, Hadley & McCloy, New York City, for Plaintiffs in Aiena.

Matthew H. Lewis, Riker, Danzig, Scherer, Hyland & Perretti LLP, Morristown, NJ, for Plaintiff Burt N. Sempier.

Scott J. Golightly, Hirschler, Fleischer, Weinberg, Cox & Allen, New York City, for Plaintiffs in Bianchi and Valentine.

Paul C. Saunders, Cravath, Swaine & Moore, New York City, for Individual Defendants.

William P. Frank, Skadden, Arps, Slate, Meagher & Flom LLP, New York City, for Corporate Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

By letter dated June 2, 2000, counsel for plaintiffs in Nos. 97 Civ. 8713 and 98 Civ. 8762 sought a ruling with respect to claims of attorney-client privilege and work product protection made by counsel for the individual defendants with respect to thirteen documents that passed between counsel for the individual defendants and counsel for an insurance carrier which, they claim, is obliged *to defend and indemnify them in this action.* The letter was accompanied by an exchange of correspondence between counsel for plaintiffs and the individual defendants that fully briefed the issues. The Court held a conference call with all counsel in which it heard oral argument, and all counsel indicated that they were prepared to have the matter decided on the present record following *in camera* inspection of the documents by the Court. The Court subsequently reviewed all of the documents in question.

### *Facts·*

The background of this action is explained in detail in *Aiena v. Olsen,*[1] familiarity with which is assumed. Only the barest essentials need be mentioned here.

Plaintiffs seek recovery from defendants on alternative theories. They assert that the Johnson & Higgins arrangements described in *Aiena* constituted an ERISA plan and that certain of the defendants violated ERISA.[2] As the question whether they constitute an ERISA plan is not free of doubt, they claim in the alternative that defendants are liable to them on various common law theories.

The individual defendants contend that the presence of the ERISA claim obliges the insurance carrier to provide them with a defense and, moreover, to indemnify them if they are found liable on that claim. They apparently concede that the carrier would have no obligation to indemnify them if liability were premised on the common law claims. The insurance carrier has disclaimed any obligation to defend or indemnify the individual defendants in these actions. The documents in question were generated in the course of the discussions between the insureds and the carrier concerning the demand for a defense and the carrier's ultimate disclaimer.

The documents are precisely the sorts of letters that any experienced attorney would expect to have been exchanged between counsel for a carrier and counsel for its insured in a coverage dispute such as this. They reflect aggressive and well informed advocacy of the respective positions of the carrier and the insureds.

One more point must be noted. This is not a situation in which the insureds' communications with the carrier reasonably might be viewed as implicitly designed to convey facts to a carrier-appointed attorney for use in the defense of the insureds. On the contrary, as counsel for the individual defendants acknowledged during oral argument, the individual defendants maintain that the carrier has a conflict of interest with respect to providing a defense. The conceded absence of coverage for any liability on the common law claims would give the carrier an interest in conducting a defense on behalf of the individual defendants in such a way as to ensure, so far as possible, that they are found liable, if at all, only on the uninsured common law claims and not on the arguably insured ERISA claim.[3] In consequence, they insist

---

**1.** 69 F.Supp.2d 521 (S.D.N.Y.1999).

**2.** 29 U.S.C. § 1001 *et seq.*

**3.** In such circumstances, carriers obliged to provide a defense typically are required to finance a defense by counsel of the insured's choosing. *See Harrington Haley LLP v. Nutmeg Ins. Co.,* 39

that they are entitled to a defense by counsel of their choice, whom they of course long ago retained, but to have that defense paid for by the carrier.

### Discussion

"Federal courts have never recognized an insured-insurer privilege as such."[4] Such protection as is available for communications between an insured an its carrier must be ·found under the attorney-client privilege and the work product doctrine.[5]

The individual defendants rely principally on *American Special Risk Insurance Co. v. Greyhound Dial Corp.*,[6] where Judge Patterson of this Court held that the privilege extended to the disclosure by an insured to its carrier of "facts required to show potential liability of the insured" prior to the carrier acknowledging a duty to defend, this on the theory that "such disclosure should be deemed 'in pursuit of legal representation.' "[7] While not explicitly articulated in such terms, the case falls comfortably within the well established principle that the privilege extends to "statements intended as a communication ... to the attorney ultimately to be retained for [the insured] by the [liability insurance] carrier, under their contract."[8] As the foregoing passage implies, however, the rule is not without limits.

To begin with, the communications from the individual defendants and their counsel at issue here were not intended to persuade the carrier to retain counsel to defend them in this action. As noted above, the individual defendants maintain that the carrier's patent conflict obliges it merely to pay for a defense by counsel already selected and controlled by the individual defendants. In consequence, the Court finds that the individual defendants have failed to establish that their advocacy of their position to the carrier was intended either to obtain legal advice or to convey information regarding the claim for the use of potential future defense counsel. Their communications simply are not the stuff of attorney-client privilege, even given the scope of the privilege as applied to communications between insureds and their liability insurers.

*In camera* review of the documents in question reinforces this conclusion and, at least in this case, provides an independent ground for rejecting the claim of privilege. While such assessments of necessity will be fact specific, these documents reveal two sophisticated parties, represented by aggressive and accomplished counsel, posturing in clear anticipation of the coverage litigation that now is pending between them in the state court. There simply is nothing in their tone or content suggestive of solicitation of or even receptiveness toward legal advice from the carrier's counsel to the insureds. In other words, given the nature of the communications at issue, this Court would reach the same result in this case even if it were · not so plain that the carrier could not provide a defense by counsel of its choice as opposed to paying the bills of the individual defendants' attorneys.

Finally, among the essential elements of the attorney-client privilege are that the communication in question be made in confidence and with the expectation that confidentiality will be maintained. There has been no showing that the individual defendants made

F.Supp.2d 403, 408–09 (S.D.N.Y.1999); *Curtis v. Nutmeg Ins. Co.*, 204 A.D.2d 833, 612 N.Y.S.2d 256, 258 (3d Dept.1994), *leave dismissed*, 84 N.Y.2d 1027, 623 N.Y.S.2d 182, 647 N.E.2d 454 (1995).

**4.** *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1514 (D.C.Cir.1993).

**5.** *See generally* John P. Ludington, *Annotation, Insured–Insurer Communications as Privileged*, 55 A.L.R.4th 336, 1987 WL 419548 (1997).

**6.** No. 90 Civ. 2066(RPP), 1995 WL 442151 (S.D.N.Y. July 26, 1995).

**7.** *Id.* at *2 (citing *Linde*, 5 F.3d at 1515).

**8.** *Hollien v. Kaye*, 194 Misc. 821, 824, 87 N.Y.S.2d 782, 785 (Sup.Ct. Sullivan Co. 1949); *see generally* Ludington, 55 A.L.R.4th § 4. In New York, this rule is referred to as the *Kandel–Finegold* doctrine after the principal appellate cases in which it was propounded. *Kandel v. Tocher*, 22 A.D.2d 513, 256 N.Y.S.2d 898 (1st Dept.1965) (Breitel, J.); *Finegold v. Lewis*, 22 A.D.2d 447, 256 N.Y.S.2d 358 (2d Dept.1965); *see* DAVID D. SIEGEL, NEW YORK PRACTICE § 348, at 500 (2d ed.1991).

these communications with the expectation that confidentiality would be maintained. Coverage litigation in which the documents certainly might be disclosed was in clear view. Quite apart from prospective coverage litigation, the insureds had every reason to suppose that the materials in question, or information contained therein, might be disclosed to reinsurers or, given the size of the potential claim, perhaps even in public filings by the carrier. Yet there was no request that the carrier maintain the communications in confidence.[9]

### Conclusion

For all of the foregoing reasons, the claims of privilege and work product protection with respect to the thirteen documents submitted for *in camera* inspection are overruled. The documents are to be produced promptly. Counsel for the individual defendants shall arrange to pick up the documents furnished for *in camera* inspection or notify chambers that those copies may be disposed of.

SO ORDERED.

---

[9]. In this regard, it is important to note that the individual defendants in this case all are wealthy, sophisticated people who spent their careers as top-flight insurance brokers and that they were represented during these communications by distinguished counsel. Their level of awareness of both the possibility of disclosure of these communications by the carrier and of the significance of failing to seek assurances as to confidentiality was unusual and possibly unique. Hence, while other people in different circumstances probably make assumptions that their communications with their insurance carriers are confidential, that cannot be said here.